**Andrew T. Reilly, OSB No. 965601**
E-mail: atr@bhlaw.com
BLACK HELTERLINE LLP
1900 Fox Tower
805 S.W. Broadway
Portland, OR 97205-3359
Telephone:  (503) 224-5560
Fax:  (503) 224-6148
Of Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **LUCILLE BECK**, an individual, | Case No. _____ |
| Plaintiff, | |
| v. | **COMPLAINT** |
| **METROPOLITAN PROPERTY AND CASUALTY INSURANCE COMPANY**, a corporation, | **Breach of Contract (28 U.S.C. § 1332)** |
| | **DEMAND FOR JURY TRIAL** |
| Defendant. | |

Plaintiff Lucille Beck alleges the following:

## I.  THE PARTIES

1.

Plaintiff Lucille Beck ("Beck") is an individual and a resident of the state of

Oregon, currently residing in Lake Oswego, Oregon, in Clackamas County.

2.

Defendant Metropolitan Property and Casualty Insurance Company ("MetLife") is a Rhode Island corporation engaged in business as a provider of, among other things, insurance policies providing financial protection against casualty losses.

## II.  JURSIDICTION AND VENUE

3.

Jurisdiction is proper in this Court under 28 U.S.C. § 1332, based upon diversity of citizenship.  The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

4.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(2) and in the Portland Division because a substantial part of the events or omissions on which this claim is based occurred in this district and the Portland Division and because the property that is the subject of the action is situated in this district and the Portland Division.

## III.  FACTUAL ALLEGATIONS

5.

At all material times, Beck owned and resided at a home (the "Residence") located at and bearing the address and commonly description of 1430 SW Englewood Drive, Lake Oswego, Oregon (the "Property").  Prior to the loss described more fully herein, Beck had lived in the Residence for 56 years, intending at all times to continue living there in perpetuity

6.

At all material times, Beck maintained a policy of insurance with and issued by MetLife, bearing Policy No. 8992868410 (the "Policy"), providing protection against damage or destruction to, among other things, the Residence.  As far as is pertinent here, the most recent renewal of the Policy covered the period from March 17, 2011 to March 17, 2012.

7.

The Policy purports to protect Beck against the financial consequences of direct physical loss to, among other things, the Residence, and contains "payment of loss" provisions entitled "Actual Cash Value Settlement," "Replacement Cost Settlement," and "Coverage A Plus," all of which dictate the manner in which losses to the Residence are handled and paid.

8.

Insofar as damage or losses to the Residence are concerned, the Policy provides three different types of settlement methods for adjusting and paying for the loss: Actual Cash Value, Replacement Cost, and Coverage A Plus, the first and last of which provide, in pertinent part, as follows:

"Covered property losses are settled as follows:

A.    **Actual Cash Value Settlement.** . . . [MetLife] will pay the **actual cash value** at the time of the loss for the damaged property, but no more than the lesser of:  (i) the amount required to repair or replace the damaged property with property of like kind and quality; or (ii) the limit of liability applying to the property.

\* \* \* \*

C.    **Coverage A Plus.**  For the dwelling under Coverage A, [MetLife] will pay the **Actual Cash Value Settlement** . . . as provided in paragraph[] 1.A. . . . above even if that cost exceeds the limit of liability shown in the Declarations."

9.

The Policy defines "actual cash value" as "the amount which it would cost to repair or replace the covered property with material of like kind and quality, less allowance for physical deterioration and depreciation including obsolescence." The Policy does not define depreciation or provide a mechanism, methodology, or standard by which deterioration or depreciation is judged or measured.

10.

Upon its most recent renewal, the Policy provided coverage for damage or destruction to the Residence in an amount of $545,700, subject to adjustment under the "Inflation Protection" provisions found therein, and Beck had purchased and paid premiums for Coverage A Plus protection. At the time of the loss described herein, the policy limit applicable to damage to or loss of the Residence had increased to $558,584 due to the application of Inflation Protection coverage.

11.

On December 20, 2011, the Residence was largely destroyed by fire. MetLife was notified of the loss and of Beck's claim for coverage under the Policy the following day, and began the process of investigating and adjusting the loss immediately thereafter.

12.

As part of its investigation and adjustment of the loss, MetLife retained McBride Construction Resources ("McBride") to prepare a scope of required repairs and cost estimate to repair or replace the damaged portions of the Residence (hereafter referred to as a "Scope & Bid"). On or around January 9, 2012, McBride provided MetLife with an incomplete Scope & Bid, with several items still "open" (i.e., undetermined cost or amount). That Scope & Bid put

Page 4 – **COMPLAINT**

the cost of repairing the Residence at no less than $520,144.44.  In addition to leaving several items "open" or "as incurred" – both of which would serve to increase the cost estimate -- the McBride Scope & Bid did not include the cost of any repairs required to comply with current building codes, assumed all hazardous material abatement and virtually all demolition would be performed by others or separately bid, and did not make any adjustments or reductions for depreciation.

13.

Also as part of its investigation and adjustment of the loss, MetLife had its own employee, James A. Lawson, Major Loss Adjuster, prepare a Scope & Bid, which he completed at or around the same time as that prepared by McBride.  Like the McBride Scope & Bid, the Lawson Scope & Bid also contained several "open" items and simply failed to address several others altogether, and further assumed that any hazardous material remediation would be performed by others or separately bid.  Notwithstanding these omissions, the Lawson Scope & Bid put the cost of repairing the residence at no less than $380,608.36.  After applying depreciation in a total amount of $32,572.02 (i.e., 8.56%), the Lawson Scope & Bid placed the actual cash value ("ACV") of the Residence at $348,036.34.

14.

While acknowledging at all times the incomplete nature of the Lawson Scope & Bid and the large discrepancy between the Lawson Scope & Bid and the McBride Scope & Bid, MetLife issued payment to Beck of $347,786.34 on or about February 29, 2012, representing the ACV as established by the incomplete Lawson Scope & Bid, minus Beck's $250 deductible.  To

/ / / / /

date, MetLife has made no further or additional payment of any amount under the coverage applicable to damage or destruction of the Residence.

15.

Within the following month, MetLife replaced Lawson as the adjuster on Beck's claim with another large loss adjuster, Spencer Funk ("Funk").  On or about April 19, 2012, after having had an opportunity to visit and view the Residence, Funk prepared and supplied Beck with his own Scope & Bid, setting the cost of repairing the Residence at no less than $428,040.20 – an increase of more than $47,000 over the replacement cost value ("RCV") and roughly $80,000 more than the ACV set forth in the Lawson Scope & Bid, but still more than $92,000 less than the incomplete McBride Scope & Bid.  Funk did not apply any depreciation factors in his analysis, and the cost to repair the Residence is therefore the same as the ACV in his Scope & Bid.

16.

Beck has at all times disputed MetLife's assessment of the cost to repair or replace the Residence, and has undertaken substantial efforts to obtain a reliable Scope & Bid by independent sources not connected with or retained by MetLife.  In fact, the cost to repair or replace the damaged portions of the Residence with material of like kind and quality is currently estimated at no less than $793,910.10.  While no one other than Lawson ever depreciated the RCV, and while the Policy is silent as to the method or mechanism for doing so, depreciating this figure in the same fashion as that employed by MetLife in the Lawson Scope & Bid results in an ACV of $723,402.84.

/ / / / /

/ / / / /

## IV.  CLAIMS FOR RELIEF

### First Claim for Relief

### (Breach of Contract)

17.

Beck incorporates the allegations and assertions of fact within paragraphs 1-16 as if fully set forth herein.

18.

The Policy requires MetLife to pay the full cost to repair or replace the Residence with materials of like kind and quality, less -- at most -- an uncertain amount for depreciation, without regard to the policy limits that might otherwise be applicable.  In the alternative, the Policy requires MetLife to pay the full cost to repair or replace the Residence with materials of like kind and quality, less -- at most -- an uncertain amount for depreciation, subject only to the applicable policy limits, plus up to an additional ten percent (10%) for debris removal.

19.

The cost to repair or replace the Residence with materials of like kind and quality is at least $793,910.10.  Even after applying the otherwise random depreciation factors found in the Lawson Scope & Bid, the cost to repair or replace the Residence, less "depreciation," is $723,402.84.  By MetLife's own admission, the RCV of the Beck Residence is at least $438,882.50 which, after applying the same depreciation factors, equates to an ACV of at least $401,314.15.

20.

To date, and despite the large difference between the Scopes & Bids prepared by its employees and/or on its behalf, and having acknowledged the incomplete nature of the Lawson Scope & Bid and having subsequently replaced the same with the Funk Scope & Bid, MetLife has failed to pay anything for the loss of the Residence other than the "depreciated" RCV found in the incomplete and since-superseded Lawson Scope & Bid, claiming instead that all increases in the subsequent Scopes & Bids are properly characterized as depreciation.

21.

Beck tendered her claim arising from the December 20, 2011 fire loss to MetLife in a timely manner, and MetLife has never identified any term, condition or exclusion in the Policy that bars coverage for Beck's loss.  The only dispute has been the valuation of said loss. Beck has fully performed all obligations imposed upon her by the Policy and all other conditions precedent to coverage, or the same have been waived and are not at issue.

22.

To date, MetLife has failed to pay Beck the ACV of the Residence under any purportedly complete Scope & Bid, as required by the Policy.  By failing to make the payment required by the unambiguous terms of the Policy, MetLife has breached its contract of insurance with Beck.

23.

Beck has been damaged by MetLife's breach in an amount no less than the difference between the amount paid by MetLife to date on the loss (i.e., $347,786.34) and the actual ACV (i.e., $723,402.84) of the Residence, or $375,616.50.

24.

The amount by which Beck has been damaged has been known since at least January 9, 2012, or was and remains easily ascertainable by resort to known, predictable, and conventional methods since that time.  As such, Beck is also entitled to an award of pre-judgment interest per ORS 82.010 at the rate of 9% from the date payment under the Policy should have been made by MetLife (i.e., sixty (60) days post-loss) to the date judgment is entered herein.

25.

Beck's suit against MetLife is an action on a policy of insurance, and the amount due from MetLife, by its own admission and actions, exceeds any payment tendered to date; Beck's claim for coverage was presented more than six (6) months prior to the commencement of this suit.  As such, Beck is entitled to an award of all reasonable attorney fees and costs

incurred in pursuing her claim, pursuant to ORS 742.061.

WHEREFORE, Beck prays for judgment in her favor as follows:

On her **First Claim for Relief**:

1.  Awarding the sum of $375,616.50, or such other amount as may be proven at trial, plus prejudgment interest thereupon from February 19, 2012 forward, plus attorney fees pursuant to ORS 742.061; and

2.  Including an award of all recoverable costs and disbursements, and any other relief deemed just, equitable, and appropriate by this court.

Dated this 24th day of May, 2013.

BLACK HELTERLINE LLP


By:_/s/ Andrew T. Reilly_
    Andrew T. Reilly, OSB No. 965601
    Phone:  (503) 224-5560
      Of Attorneys for Plaintiff

Page 9 – **COMPLAINT**