IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LUCILLE BECK, an individual,

                         Plaintiff

     v.

METROPOLITAN PROPERTY AND
CASUALTY INSURANCE COMPANY,
a corporation,

                         Defendant.

Case No. 3:13-cv-00879-AC

OPINION AND ORDER

_____

ACOSTA, Magistrate Judge:

In December 2011, Lucille Beck's ("Beck") home was severely damaged by a fire. Shortly thereafter, Beck filed a claim for reimbursement with her insurer, Metropolitan Property and Casualty Insurance Company ("Metropolitan"). However, the parties could not agree on the actual cash value of Beck's home. In January 2012, Beck hired attorneys Clarence Greenwood and Andrew T. Reilly to represent her in the negotiation process with Metropolitan.

To assist them in negotiating Beck's claims, Beck's attorneys retained the services of contractor Harry Shook ("Shook") of Partners, Inc., in March 2012 to prepare a scope of repairs to

estimate the cost of repairing her damaged home. The March 2, 2012, retention letter from Beck's attorney to Shook ("Retention Letter") (Dkt. No. 65-1), which comprises two pages that, combined, equal a single full page of text, reads in relevant part:

> Enclosed is an executed fee/retention agreement regarding our engagement of you and Partners Inc. as experts to assist us with the preparation and presentation of Ms. Beck's fire loss claim at her residence[.]
>
> To reiterate from our prior discussions, our goal in retaining you is to have a reliable, credible, and unimpeachable scope and bid/estimate prepared regarding work necessary to repair or replace the dwelling at the above location to its pre-loss condition. Such a scope and bid will allow us to more effectively analyze and challenge, if necessary, those scopes and bids being promulgated by Ms. Beck's insurer, MetLife, and its own retained contractor, McBride Construction. Of course, we would also be relying upon your expertise and assistance in reviewing and commenting upon those competing scopes and bids.

(Retention Letter, at 1.) During the same period, Metropolitan prepared several of its own scope of repairs estimates of the loss to Beck's house.

In late August 2012 Shook met Metropolitan agent Spencer Funk ("Funk") at Beck's property to discuss Shook's scope of repairs and find common ground between the parties' respective estimates. Funk and Shook came to a preliminary agreement regarding the estimate to repair portions of Beck's home, but left open negotiations as to other items. The parties continued negotiating for several months but could not reach a settlement. In May 2013, Beck filed this suit against Metropolitan for breach of contract.

During discovery, Metropolitan subpoenaed Shook for deposition. Beck opposed the subpoena and filed a motion to quash. (Dkt. No. 29.) In her motion, Beck argued that Shook, as an expert hired only to facilitate settlement negotiations, could not be deposed pursuant to evidentiary protections applicable to settlement negotiations. Metropolitan argued Beck had listed Shook as a

fact witness and only belatedly claimed his testimony to be protected under the attorney work-product privilege and evidentiary protection of settlement discussions.

A hearing on Beck's motion occurred on June 16, 2014. During the hearing the court reviewed a copy of the Retention Letter. In part, the court found:

> I reviewed the March 2, 2012 engagement letter that constituted the point in time at which Mr. Shook was retained by Ms. Beck's attorneys. It's clear to me that Mr. Shook was retained in anticipation of litigation and to assist Ms. Beck's lawyers in trying to sort out the scope of work and, more particularly, the proper amount of payment for the damage to her home.
>
> * * * *
>
> It is clear to me from the information I have available to me that Mr. Shook's assessment that was given to Met Life prior to the August 28, 29 meeting, and that the August 28, 29 meeting were in the context of settlement negotiations to resolve the discrepancies between what the plaintiff believed she was entitled to and what the defendant believed the plaintiff was entitled to. For those reasons, I'm going to quash the deposition subpoena issued to Mr. Shook as well.

(Transcript of June 16, 2014, Hearing on Plaintiff's Motion to Quash, at 31-32.). The court granted Beck's motion to quash the Shook subpoena and also ordered her to formally submit to the court the Retention Letter for filing under seal following the court's *in camera* review during the hearing. (Dkt. No. 45.)

On July 17, 2014, the court conducted another discovery hearing, this one to address Beck's Motion for Protective Order (Dkt. No. 49). In that motion Beck sought to prevent Metropolitan from conducting discovery into her financial information. During the hearing on Beck's motion, however, the court and counsel discussed Metropolitan's Motion to Amend Answer and Affirmative Defenses (Dkt. No. 54), which Metropolitan had filed the day before and which sought to add seven new affirmative defenses based on the theory that Beck had settled some or all or her claim. The court

set a briefing schedule for Metropolitan's motion, scheduled oral argument on the motion for July 30, 2014, and, because of the issues raised in the motion, ordered Beck to produce to Metropolitan a copy of the Retention Letter. (Dkt. No. 62.)

On July 23, 2014, Metropolitan filed a Motion for Reconsideration of Discovery Ruling ("Motion for Reconsideration") (Dkt. No. 65). In its motion, Metropolitan conceded that Shook originally had been retained to assist Beck's attorneys in their efforts to settle Beck's claim, and it acknowledged the court had ruled that such retention was in anticipation of litigation. (Defendant's Memorandum in Support of Motion for Reconsideration of Discovery Ruling ("Def's. Reconsid. Mem.") at 4.) Metropolitan contended, however, that Beck had waived any work-product privilege that applied by disclosing Shook's reports to Metropolitan e and allowing Shook to meet with Funk to discuss the scope of repairs. (Def's. Reconsid. Mem. at 4-5.) Metropolitan contended:

> Based in part on many of the arguments Plaintiff advanced regarding the Motion to Quash, Defendant filed a Motion to Amend its Answer on July 16, 2014. (#54) At the hearing on Plaintiff's Motion for Protective Order on July 17, 2014, the Court provided a copy of the retainer letter that was previously only viewed in camera. This was the first time Defendant was given the opportunity to review the letter from Plaintiff's counsel to Mr. Shook. This letter constitutes new evidence that warrants the Court to reconsider its June 16, 2014[,] Order [Dkt. 45].

(Def's. Reconsid. Mem. at 2.)

### Legal Standard

The Federal Rules of Civil Procedure do not explicitly discuss motions for reconsideration. *Allen v. Nw. Permanente, P.C.*, No. 3:12-cv-0402-ST, 2012 WL 5996935, at *1 (D. Or. Nov. 30, 2012). However, several rules contemplate a situation where the court may revisit prior decisions and order them amended, rescinded, or reversed. FED. R. CIV. P. 59(e), 60(b). After the court has entered a final judgment in a matter, a party may seek relief from that judgment "under either Federal

OPINION AND ORDER - 4                                                          [RMD]

Rule of Civil Procedure 59(e) (motion to alter or amend a judgment) or Rule 60(b) (relief from judgment)." *Allen*, 2012 WL 5996935, at *1, *quoting Sch. Dist. No. 1J, Multnomah County, Or. v. ACandS, Inc.,* 5 F.3d 1255, 1263 (9th Cir. 1993). Rule 60(b) provides that a court may "relieve a party or its legal representative from a final judgment, order or proceeding for the following reasons:"

> (1) mistake, inadvertence, surprise, or excusable neglect;

> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

> (3) fraud . . . , misrepresentation or misconduct by an opposing party;

> (4) the judgment is void;

> (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

> (6) any other reason that justifies relief.

FED. R. CIV. P. 60(b). Rule 59(e) does not articulate a test to determine when a court should reconsider a prior decision, but courts have determined that reconsideration under Rule 59(e) is "appropriate if the district court (1) is presented with newly discovered evidence, (2) committed a clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sissoko v. Rocha,* 440 F.3d 1145, 1153-54 (9th Cir. 2006), *Kona Enters., Inc. v. Estate of Bishop,* 229 F.3d 877, 890 (9th Cir. 2000). Under either rule, "a motion for reconsideration should accomplish two goals: (1) it should demonstrate reasons why the court should reconsider its prior decision and (2) set forth law or facts of a strongly convincing nature to induce the court to reverse its prior decision." *Romtec, et al. v. Oldcastle Precast, Inc.*, 08-06297-HO, 2011 WL

OPINION AND ORDER - 5                                                                                    [RMD]

690633, at *8 (D. Or. Feb. 16, 2011), *citing Donaldson v. Liberty Mut. Ins. Co.*, 947 F. Supp. 429, 430 (D. Haw 1996).

When a party moves for reconsideration based on new evidence, the court applies the same test regardless of whether the motion is brought under Rule 59 or Rule 60. *Jones v. Aero/Chem Corp.*, 921 F.2d 875, 878 (9th Cir. 1990), *citing* 11 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTCIE AND PROCEDURE: CIVIL § 2859 (1973). "Under this test the movant must show the evidence (1) existed at the time of the [original decision], (2) could not have been discovered through due diligence, and (3) was of such magnitude that production of it earlier would have been likely to change the disposition of the case." *Jones*, 921 F.2d at 878 (internal quotation marks omitted).

Reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). Motions for reconsideration should not be frequently made or freely granted. *Twentieth Century–Fox Film Corp. v. Dunnahoo*, 637 F.2d 1338, 1341 (9th Cir. 1980).

*Discussion*

Metropolitan's sole argument is the Retention Letter constitutes new evidence which should compel the court to reconsider its June 16, 2014, order granting Beck's Motion to Quash. Beck contends Metropolitan's motion is untimely and the Retention Letter is not new evidence as defined by the Ninth Circuit. The court finds the Retention Letter is not new evidence and, thus, does not warrant reconsideration of its June 16, 2014, order, and in the alternative finds that if the Retention Letter is new evidence, it does not alter the court's June 16, 2014, order. Accordingly, Metropolitan's motion for reconsideration is denied in its entirety.

I.  Metropolitan's Request for the Court to Reconsider Its Prior Discovery Ruling.

A motion for reconsideration prompts a two-step inquiry.  First, whether the court should reconsider a prior ruling; and second, if the court determines it should reconsider a prior ruling, whether the court should change the prior ruling.  Here, whether to reconsider the court's original order that quashed Metropolitan's deposition subpoena of Shook depends on whether or not the Retention Letter constitutes "new evidence," as Metropolitan argues.

Implicit in the exacting and rigid standards under which motions for reconsideration are evaluated is that proffered new evidence must be new not merely in tangible form but in its substance.  A newly discovered document that contains information previously in the moving party's possession is not "new evidence" that satisfies the reconsideration standard.  A contrary conclusion would severely undermine the extraordinary and rare remedy that reconsideration is intended to be: any newly discovered or disclosed tangible item would automatically constitute "new evidence" which, in turn, would always require reconsideration of a prior ruling, without regard to whether the information the item contained in fact is new.  This interpretation of the standard is firmly supported by *Jones's* requirement that the court must find the new evidence of such magnitude that production of it earlier would have been likely to change the outcome, a requirement that focuses on the content of the evidence and not its mere existence.

Metropolitan knew prior to the June 16, 2014, hearing all the facts it now claims the Retention Letter newly reveals.  First, as previously noted, Metropolitan has conceded that Beck originally retained Shook in anticipation of litigation.  Thus, it is not disputed that prior to the June 16, 2014, hearing Metropolitan knew this fact.  But even if Metropolitan did not intend its concession to apply to facts in its possession prior to the July 16, 2014, hearing, the record

OPINION AND ORDER - 7                                                      [RMD]

establishes beyond dispute that Metropolitan knew by August 2012 that Shook was an active participant on Beck's behalf in the parties' discussions of Beck's claim, which claim the parties vigorously disputed and resulted in Becks' attorneys referencing litigation as an increasingly likely alternative. (*See* Opinion and Order on Defendant's Motion to Amend Answer, at 2-7 (Dkt. No. 86), filed August 26, 2014.)  Further, in May 2014, Beck's attorneys filed a declaration in which they attested to this fact, which declaration supported Beck's Motion to Quash Metropolitan's deposition subpoena to Shook.  (*See* Declaration of Declaration of Margaret E. Schroeder in Support of Plaintiff's Reply in Support of Motion to Quash Subpoena to Harry Shook (Dkt. No. 42), at 1-2.) Therefore, prior to the June 16, 2014, hearing, Metropolitan had knowledge of Shook's involvement on Beck's behalf.

Second, the record shows Metropolitan also knew before the June 16, 2014, hearing that Beck's attorneys had retained Shook to help them settle Becks' claim.  The information in the Retention Letter memorializes that Beck's attorneys hired Shook to evaluate the loss to Beck's house and support her attorneys' efforts to negotiate with Metropolitan.  Beck disclosed this fact prior to the June 16, 2014, hearing.  In her reply memorandum filed in support of her Motion to Quash the deposition subpoena Metropolitan issued to Shook, filed May 13, 2014, Beck stated:

> MetLife also asserts that Mr. Shook's conversations with MetLife's representatives during joint inspections of Mrs. Beck's property and during negotiations regarding the cost of repairs constitutes a waiver of the non-testifying expert privilege. Response Brief, p. 8.  This, too, is incorrect, as it mischaracterizes the settlement discussions between Mrs. Beck and MetLife that involved Mr. Shook.  As shown in e-mail communications between Mrs. Beck's attorney and a representative of MetLife, Mr. Shook was to conduct a joint inspection and participate in the negotiation of a potential settlement. Schroeder Decl. , ¶ 7, Ex. 1.  Mr. Shook's scope and bid were provided to MetLife prior to this meeting in an effort to reach a mutually satisfactory agreement as to the amount owed Mrs. Beck under MetLife's insurance policy for the damage to the structure of her home.  *Id.* Because such

OPINION AND ORDER - 8                                                          [RMD]

attempts at settlement and compromise receive favorable evidentiary treatment, see
Fed. R. Evid. 408, they cannot support the conclusion that Mrs. Beck waived any
privilege with regard to the Mr. Shook, the non-testifying expert.

(Plaintiff's Reply in Support of Motion to Quash Subpoena to Harry Shook (Dkt. No. 41), at 6.)

Furthermore, correspondence exchanged between Beck's attorneys and Metropolitan's

representatives between August 2012 and February 2013 made clear that Shook had been supporting

Beck's settlement efforts, and that Shook's communications with Funk were for that purpose. (*See*

Opinion and Order on Defendant's Motion to Amend Answer, at 2-7 (Dkt. No. 86), filed August 26,

2014.)

Third, Metropolitan also knew prior to the June 16, 2014, hearing that Shook had met with

Funk in August 2012 to discuss in detail Beck's claim. There is no dispute that at the August 2012

meeting Shook gave Funk a copy of Shook's preliminary scope of repairs document. There is no

dispute Metropolitan knew this meeting occurred, that it knew Funk and Shook discussed Beck's

claim, that it knew Funk and Shook discussed numerous individual items comprising Beck's loss,

and that it knew Funk and Shook were present on behalf of the principal parties specifically for the

purpose of resolving Beck's claim. Thus, by August 2012 Metropolitan had full knowledge that

Shook had been retained by Beck, that he had disclosed to Funk his scope of repairs document, and

that he had discussed with Funk at length the information contained in that document.

Comparing all this information known to Metropolitan to the information contained in the

Retention Letter demonstrates that none of the information contained in the Retention was

information new to Metropolitan at the time of the June 16, 2014, hearing. That the Retention Letter

itself had not been given to Metropolitan before the hearing does not alter that Metropolitan already

knew of the information it contained. The critical inquiry is whether the information the Retention

OPINION AND ORDER - 9                                                                    [RMD]

Letter contained is new, and the record shows it is not. Thus, for the above reasons, the Retention Letter does not constitute new evidence and the court will not reconsider its prior ruling quashing Metropolitan's deposition subpoena to Shook.

In addition, a court should not reconsider a prior ruling if the reconsideration request assert new legal arguments that could have been asserted previously. *See Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (a motion for reconsideration "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation"); *Harley-Davidson Credit Corp. v. Turudic*, Case No. 3:11-cv-01317-HZ, 2012 WL 5411771, at *3 (D. Or. Nov. 6, 2012) (arguments made for the first time on motion for reconsideration are improperly raised). Here, Metropolitan's motion rests on a new argument not previously made, that Shook's status evolved after Beck initially retained him, and that the court "should have . . . analyzed each of the pre-litigation events separately to determine whether the work product doctrine applied and if it did, whether it was waived." (Defendant's Memorandum in Support of Motion for Reconsideration of Discovery Ruling (Dkt. No. 64), at 5.) As the court already has found, the facts upon which this argument is based were known to Metropolitan prior to the June 16, 2014, hearing, as early as February 2013, when the parties' settlement discussions ended unsuccessfully, and at least by April 2014, when Beck, according to Metropolitan, changed its characterization of Shook from fact witness to non-testifying expert. (Defendant's Response in Opposition to Plaintiff's Motion to Quash Subpoena to Harry Shook (Dkt. No. 35), at 5.) Metropolitan could have raised its current argument at the time of Beck's initial motion to quash, but it did not. For this additional reason, the court will not reconsider its prior ruling quashing Metropolitan's deposition subpoena to Shook.

OPINION AND ORDER - 10                                                      [RMD]

II.  Reconsideration of the Court's Prior Discovery Ruling.

Even if the Retention Letter constitutes new evidence and Metropolitan's argument is not one it could have raised previously, the Retention Letter does not affect the court's prior discovery ruling. Under the third element of the *Jones* test, the new evidence must be of such a "strongly convincing nature to induce the court to reverse its prior decision." The Retention Letter does not reach that high standard because, as explained previously, the record contained the information present in the Retention Letter and was known to the court at the time the court ordered Shook's subpoena quashed. Summarized, Shook was hired to, and did, support Beck's attorneys' efforts to evaluated and settle Beck's claim, and Metropolitan knew at all relevant times that Shook worked in this capacity. Additionally, Metropolitan's arguments based on the Retention Letter's content are similar to those it made in opposition to Beck's Motion to Quash and, similarly, do not produce a different conclusion on reconsideration. For these reasons, on reconsideration the court does not change its order quashing Shook's deposition subpoena.

## Conclusion

For the reasons stated above, Metropolitan's Motion for Reconsideration of Discovery Ruling (Dkt. No. 64) is DENIED.

IT IS SO ORDERED

This 5th day of September, 2014.

JOHN V. ACOSTA
United States Magistrate Judge

OPINION AND ORDER - 11                                                    [RMD]