IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

LUCILLE BECK, an individual,

Case No. 3:13-cv-00879-AC

Plaintiff

OPINION AND ORDER

v.

METROPOLITAN PROPERTY AND
CASUALTY INSURANCE COMPANY,
a corporation,

Defendant.

ACOSTA, Magistrate Judge:

Plaintiff Lucille Beck ("Beck") filed this action against Metropolitan Property and Casualty Insurance Company ("Metropolitan") for breach of an insurance policy on her home, which was severely damaged in a fire. The parties dispute whether Metropolitan's tender of $347,786.34 constitutes the Actual Cash Value ("ACV") of Beck's home, to which Beck was entitled under the insurance policy ("the Policy"). The parties have now filed cross-motions for partial summary judgment. Beck contends she is entitled to summary judgment on the question of whether

OPINION AND ORDER - 1

[RMD]

Metropolitan breached the Policy as a matter of law. She contends that the jury at trial should be instructed that Metropolitan breached the Policy and should be tasked only with determining the ACV of her home. She also moves for summary judgment on her request for attorney fees. Metropolitan filed its own motion for partial summary judgment and asks the court to hold that Beck is contractually foreclosed from recovering the Replacement Cost Value ("RCV") of her house.

After careful review of the record, the court concludes that Beck is entitled to partial summary judgment, as no material issues of material fact exist and Beck has demonstrated that Metropolitan breached the Policy as a matter of law. In addition, because Metropolitan did not settle her claim within six months of the date she filed it, she is entitled to attorney fees as a matter of law. Finally, the court concludes Metropolitan is not entitled to partial summary judgment, as genuine issue of material fact remain regarding the issues Metropolitan presents in its Motion for Partial Summary Judgment.[1]

### Factual Background

On December 20, 2011, Beck's Christmas tree caught fire and severely damaged her home. Beck immediately notified Metropolitan, with whom she had a homeowner's insurance policy ("the Policy"), and filed a claim. (Declaration of Margaret E. Schroeder filed September 23, 2014, ("Schroeder Decl. I") Ex. A at 6-7, 21.) The Policy provides in relevant part:

> A. Actual Cash Value Settlement. Subject to the applicable deductible, we will pay the actual cash value at the time of the loss for the damaged property, but no more than the lesser of:
>
> (i.) The amount required to repair or replace the damaged property with property of like kind and quality; or

---

[1] The court finds this motion appropriate for disposition without oral argument pursuant to LR 7-1(d)(1).

(ii.)  The limit of liability applying to the property.

. . .

2.  If you repair or replace the damaged or destroyed property, you may make further claim for any additional payments for Replacement Cost Settlement provided:

      a.  you have not reached the applicable limit of liability;

      b.  you still have an insurable interest in the property;

      c.  you notify us within 180 days after the date of the actual cash value payment of your decision to repair or replace the damaged or destroyed dwelling or private structure;

      d.  you notify us within 30 days after the repair or replacement has been completed; and

      e.  the date of completion is within one year from the date of actual cash value payment.

The foregoing title limitations shall apply unless you or your representative submits written proof providing clear and reasonably justification for the failure to comply with such time limitation.

(Schroeder Declaration of October 30, 2014 (Schroeder Decl. II) Ex. 2).  The Policy defines ACV as "the amount which it would cost to repair or replace covered property with material of like kind and quality, less allowance for physical deterioration and depreciation including obsolescence." (Schroeder Decl. II Ex. 2 at 8.)

The day after Beck's home was damaged, Metropolitan assigned James A. Lawson ("Lawson") to determine the "cause and origin" of Beck's loss and to estimate the ACV of Beck's loss.  (Schroeder Decl. I Ex. A at 10-11, 25.)  Lawson prepared an estimate of the cost necessary to repair Beck's home ("the First Lawson Estimate").  The First Lawson Estimate assigned Beck's home a replacement cost value ("RCV") of $380,608.36.  After applying an 8.3% depreciation

OPINION AND ORDER - 3                                                                                    [RMD]

factor, Lawson estimated the ACV of Beck's home was $348,036.34. (Schroeder Decl. I Ex. A at 123.) However, only two days after the First Lawson Estimate, Lawson issued a second repair estimate, wherein he revised the RCV and ACV of Beck's home upward by $1,863.20 to $382,471.56 and $349,899.54, respectively. (Schroeder Decl. Ex A at 16-18, 219.)

On February 29, 2012, Metropolitan tendered payment to Beck in the amount of $347,786.34 ("the Payment"). (Answer ¶ 11.) Metropolitan's payment was based only on the First Lawson Estimate and did not account for the upward revisions in the Second Lawson Estimate. (Answer ¶ 11.) Since then, Metropolitan has not provided Beck with a supplemental payment or otherwise provided additional compensation for her loss. (Schroeder Decl. Ex. A at 18-19.)

In March 2012, Metropolitan assigned Spencer Funk ("Funk") to serve as the adjustor of Beck's claim. (Schroeder Decl. Ex. B at 7-10.) Funk reviewed Beck's losses and prepared a third estimate of Beck's repair costs (the "First Funk Estimate"). (Schroeder Decl I, Ex. B at 14-15.) In the First Funk Estimate, Funk determined Beck's home had an RCV of $428,040.20, but did not calculate an ACV. (Schroeder Decl. Ex. A at 14-15.) Funk later met with a Harry Shook ("Shook"), a general contractor hired by Beck to help the adjustment process, and participated with a two-day property review. (Declaration of Spencer Funk ("Funk Decl.") (Dkt. No 40) ¶ 5.) Ultimately, Shook and Funk agreed on a revised estimate (the "Second Funk Estimate") which assigned Beck's home an RCV of $438,822.50. (Funk Decl. ¶ 17.) Similar to the First Funk Estimate, the Second Funk Estimate did not articulate an ACV. (Funk Decl. Ex. 7.)

After Beck filed this lawsuit, Metropolitan retained the services of expert witness Jim Omundson ("Omundson"), who prepared a "Fire Restoration/Expert Disclosure Review" estimating the ACV of Beck's home (the "Expert Report"). (Schroeder Decl. I, Ex. F at 1.) In the Expert

OPINION AND ORDER - 4                                              [RMD]

Report, Omundson applied the same 8.3% depreciation factor that Lawson used to render the First and Second Lawson Estimates and concluded Beck's home had an ACV of $402,401. (Schroeder Decl. I, Ex. F at 1.) Moreover, in his rebuttal report, Omundson opined that his review of Beck's expert-witness report "[did] not lead [him] to alter [his] prior Cost Analysis, which was forwarded to [Beck July 30, 2014,] and totaled $402,401 Actual Cost Value (ACV)." (Schroeder Decl Ex. F at 3.)

### Legal Standard

A court should grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a). The moving party bears the burden of establishing that no issue of fact exists and that the nonmovant cannot prove one or more essential elements of a claim or defense. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). If the movant meets his burden, the nonmovant must "go beyond the pleadings [ ] by her own affidavits . . . [to] designate specific facts showing that there is a genuine issue for trial." *Id.* (internal quotation marks omitted). On summary judgment, the court is bound to view all facts in a light most favorable to the nonmovant and must draw all justifiable inferences in the nonmovant's favor. *Narayan v. EGI, Inc.*, 616 F.3d 895, 899 (9th Cir. 2010).

### Discussion

Both parties now move for partial summary judgment. Metropolitan asks the court to find that the Policy's language forecloses Beck from recovering the full RCV of her home as damages in this case. Beck's motion asks the court to find that Metropolitan breached the Policy as a matter of law by failing to supplement the Payment on her claim. She also moves for summary judgment to declare a right for attorney fees under OR. REV. STAT. § 742.061(1). After careful review of the

OPINION AND ORDER - 5                                                    [RMD]

record, the court grants Beck's Motion for partial summary judgment and denies Metropolitan's motion for partial summary judgment.

I. Applicable Law

Federal courts siting in diversity must apply state substantive law and federal procedural law. *Gasperini v. Ctr. for Humanities, Inc.,* 518 U.S. 415, 427 (1996). However, the distinction between the procedural and substantive is not always clear. *Id.* In parsing the procedural from the substantive, courts must determine whether the statute in question has "so important an effect upon the fortunes of one or both of the litigants that failure to apply it" would lead to inconsistent results or would lead to judicial forum shopping. *Hanna v. Plummer,* 380 U.S. 460, 468 n.9 (1965). More recently, the Supreme Court held that a state statute is substantive if it "significantly affects the result of a litigation" on the merits. *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,* 559 U.S. 393, 406 (2010).

An insurance policy is a contract. *Stewart v. Morosa Bros. Transp. Co.,* 611 F.2d 778, 781 (9th Cir. 1980). The Ninth Circuit, as well as courts in this district, have long held that contract interpretation is a matter of substantive law to which state law applies. *Getlin v. Maryland Cas. Co.,* 196 F.2d 249, 250 (9th Cir. 1952), *Snook v. St. Paul Fire & Marine Ins. Co.,* 220 F. Supp. 314, 316-17 (D. Or. 1963) ("This being a diversity case, jurisdiction is grounded on that fact and the [insurance] policy must be interpreted and construed in accordance with the Laws of Oregon, the place where the contract was made."). Because the primary issue in this case is the interpretation and application of an insurance policy, the court will apply Oregon law to determine the outcomes of each party's motion.

## II.  Metropolitan's Motion for Partial Summary Judgment

Metropolitan moves for partial summary judgment on the issue of whether Beck may recover the RCV of her home.  Specifically, Metropolitan contends Beck has not met the conditions precedent to recover RCV because she did not complete reconstruction of her home within one year of the date Metropolitan tendered to Beck the ACV of her home.  Beck argues that Metropolitan's motion is based on a disputed fact, and is not appropriate for summary judgment at this time.  The court agrees with Beck and denies Metropolitan's motion.

The Policy provides that, in the event the covered property suffered a loss covered by the Policy, Metropolitan would "pay the [ACV] at the time of the loss for the damaged property." (Schroeder Decl. II Ex. 2.)  The Policy further provides that the insured may recover the full RCV of the covered property if, among other things, the insured notifies Metropolitan within 180 days after receipt of ACV payment that he or she intends to rebuild the covered property and "the date of completion is within one year from the date of [ACV] payment."  (Schroeder Decl. II Ex. 2.)

Metropolitan contends that it paid Beck the ACV of her home on February 29, 2012, and she gave no notice of her intent to rebuild or repair the covered property.  Metropolitan also points out it is undisputed that Beck did not complete construction of her home within one year after Metropolitan tendered the Payment.  However, Metropolitan's argument is based on a premise which is in dispute.  Metropolitan claims that by paying Beck $347,786.34 on February 29, 2012, it triggered the one-year time-frame during which Beck was required to complete reconstruction of her home.  However, as the court will discuss in more detail *supra*, the true ACV of Beck's home is in dispute, and the record does not support a conclusion that no reasonable jury could find in Beck's favor.  Viewing the facts in a light most favorable to Beck, as the court must do on defendant's

OPINION AND ORDER - 7                                                        [RMD]

motion for summary judgment, the court cannot conclude Metropolitan tendered the full ACV of Beck's home as a matter of law. Because a dispute exists regarding whether Beck has received the ACV of her home, the court cannot conclude as a matter of law that the one-year "reconstruction" period began when Metropolitan tendered the February 29, 2012 payment or that the period has ended. Thus, a genuine issue of material fact forecloses this court from granting Metropolitan's Motion for Partial Summary Judgment.

## III. Beck's Motion for Partial Summary Judgment

Beck acknowledges that the true ACV of her home remains in dispute, but nonetheless moves for summary judgment on the issue of whether Metropolitan breached the policy. In addition, Beck moves for summary judgment on the issue of whether she is entitled to attorney fees. Metropolitan contends that a genuine issue of material fact precludes this court from granting Beck summary judgment on both issues.

### A. Breach of the Policy

Although Beck concedes that a genuine issue of material fact exists regarding the true ACV of her home, she contends that this court may nonetheless conclude Metropolitan breached the Policy as a matter of law. Specifically, Beck observes that Lawson, Funk, and Omundson all agreed that the true ACV of Beck's home was higher than the amount articulated in the First Lawson Estimate. Because Metropolitan based its Payment on the First Lawson Estimate, and has not provided her supplemental payment, Beck argues no reasonable jury could find Metropolitan complied with the Policy by paying her the ACV of her home. Metropolitan maintains that the Payment fully accounted for the ACV of Beck's home, and a genuine issue of material fact remains on whether it breached the Policy.

OPINION AND ORDER - 8                                                    [RMD]

As the court has already discussed, an insurance policy is a contract. *Stewart v. Morosa Bros. Transp. Co.*, 611 F.2d 778, 781 (9th Cir. 1980). Thus, for Beck to succeed on her Motion for Partial Summary Judgment, she must demonstrate that there are no genuine issues of material fact and the record demonstrates she should succeed on a claim for breach of contract. *Id.* To succeed in a claim for breach of contract, a plaintiff must demonstrate: (1) the existence of an enforceable contract; (2) the plaintiff performed under the contract; (3) the defendant breached the contract; and (4) the plaintiff suffered damages. *Slover v. Ore. State Bd. Of Clinical Soc. Workers*, 144 Or. App. 565, 570 (1996).

The parties stipulate that the Policy was valid and Beck performed under the contract, but Metropolitan disputes that it breached the contract and that Beck suffered damages. The Policy provides that, in exchange for Beck's payment of insurance premiums, Metropolitan promised to pay Beck the ACV of her home in the event she suffered a covered loss. (Schroeder Decl. II. Ex. 2.) The Policy defines ACV as, "the amount which it would cost to repair or replace covered property with material of like kind and quality, less allowance for physical deterioration and depreciation including obsolescence." (Schroeder Decl. II. Ex. 2 at 8.) Thus, the ACV is calculated by applying a depreciation factor to the RCV. (Thenell Decl. (Dkt. No. 98) Ex. 2 at 95.) While preparing the First Lawson Estimate and Second Lawson Estimate, Lawson applied an 8.3% depreciation factor to the RCV to determine the ACV. Moreover, Omundson applied an identical 8.3% depreciation factor to determine the ACV in his expert report. Metropolitan admitted "that the Lawson Scope applies depreciation in a manner that complies with Met P&C's usual practices and procedures . . . ." (Schroeder Decl. I Ex. C at 5.)

Metropolitan argues summary judgment on the ACV issue is inappropriate because a genuine

issue of material fact exists regarding the ACV of Beck's home. But Beck does not ask the court to fix the ACV; instead, she requests the court find that no reasonable jury could find that the Payment constituted the true ACV, and that by failing to supplement the Payment, Metropolitan is in breach of the Policy as a matter of law. The court agrees with Beck and concludes that no reasonable jury could find Metropolitan fulfilled its obligations under the Policy by tendering the Payment to Beck.

Metropolitan does not contend Beck failed to pay her premiums or otherwise fulfill her obligations under the Policy, so Metropolitan is in breach of the Policy unless the Payment constitutes the true ACV of Beck's home. Metropolitan's February 29, 2012 Payment was based on the First Lawson Estimate minus Beck's $250 deductible, and amounted to $347,786.34. Just two days after he completed the First Lawson Estimate, however, Lawson issued the Second Lawson Estimate, which revised the RCV and ACV of Beck's home upward $1,863.20After Metropolitan assigned Funk to beck's claim, the estimated RCV and ACV increased twice more. The First Funk Estimate put the RCV at $428,040.20 and the Second Funk Estimate increased the RCV to $438,822.50. Omundson adopted the RCV from the Second Funk Estimate and, after applying the 8.3% depreciation factor utilized by Lawson, rendered an ACV estimate of $402,401. Despite numerous upward revisions in its RCV and ACV estimates, Metropolitan did not make a second payment to supplement the Payment. The court concludes that no reasonable jury could find that Metropolitan complied with the Policy, as the overwhelming evidence on the record shows that the amount of the true ACV is higher that tendered by Metropolitan on February 29, 2012.

Metropolitan's two arguments to support its position it already has paid Beck the ACV of her home are unavailing. First, it contends that a reasonable jury could find the First Lawson

OPINION AND ORDER - 10                                              [RMD]

Estimate accurate.  However, only two days after he completed the First Lawson Estimate, Lawson completed the Second Lawson Estimate, which increased the RCV and ACV of Beck's home.  The fact that Lawson, unilaterally and without prompting, increased the estimated value of Beck's home shows the First Lawson Estimate was inaccurate.  Thus, basing its payment on an inaccurate ACV would not yield a payment which would fulfill Metropolitan's obligations under the Policy.

Second, Metropolitan argues that there are multiple ways of calculating depreciation, and even if the RCV of Beck's home was higher than that articulated in the First Lawson Estimate, the ACV of her home may be at or below the amount of the Payment.  However, in response to Beck's requests for admission, Metropolitan admitted "that the Lawson Scope applies depreciation in a manner that complies with Met P&C's usual practices and procedures." (Schroeder Decl. I Ex C at 4.)  Moreover, Metropolitan's expert witness applied the same 8.3% depreciation factor to calculate ACV for his expert-witness report.  Under Federal Rule of Civil Procedure 36, "a matter admitted [in a request for admission] is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." FED. R. CIV. P. 36(b).  Because Metropolitan admitted that Lawson and Omundson used a method consistent with its policies to calculate depreciation, Metropolitan cannot now contend that a new calculation could or should be applied to yield an ACV at or below that calculated in the First Lawson Estimate.

If Lawson and Omundson, by Metropolitan's admission, used the proper method of calculating ACV, and the upward revisions from the First Lawson Estimate were adopted by Lawson, Funk, and Omundson, then Metropolitan clearly did not pay, and still has not paid, Beck the full ACV of her home when it tendered the February 29, 2012 Payment.  Although the ACV amount remains in dispute, no reasonable jury could find that the true ACV is an amount less than

OPINION AND ORDER - 11                                                        [RMD]

the ACV from the Second Lawson Estimate, as Lawson, Funk, and Omundson disavowed the First Lawson Estimate by repeatedly increasing the RCV and ACV of Beck's home throughout the claims process. No matter which ACV figure Metropolitan generated over the period of time between when Lawson revised his First Estimate and the conclusion of all discovery in this case, there is no genuine issue of material fact that the February 29, 2012 Payment was not adequate under the Policy. Because no reasonable jury could find that the February 29, 2012 Payment constituted the full ACV of Beck's home, the court concludes Metropolitan breached the Policy as a matter of law.

B. *Attorney Fees*

Beck also moves for summary judgment on whether she is entitled to recover attorney fees under OR. REV. STAT. § 742.061. Metropolitan argues Beck's request for attorney fees is premature, as a genuine issue of fact exists as to the true ACV of Beck's home. In diversity cases, state law governs the parties' entitlement to attorney fees. *Riordan v. State Farm Mut. Auto. Ins. Co.*, 589 F.3d 999, 1004 (9th Cir. 2009). Thus, whether Beck may recover fees is governed solely by the law of Oregon. Oregon law provides in relevant part:

> [I]f settlement is not made within six months from the date proof of loss is filed with an insurer and an action is brought in any court of this state upon any policy of insurance of any kind or nature, and the plaintiff's recovery exceeds the amount of any tender made by the defendant in such action, a reasonable amount to be fixed by the court as attorney fees shall be taxed as part of the costs of the action and any appeal thereon.

OR. REV. STAT. § 742.061(1). Courts in this district have interpreted § 742.061 to require a plaintiff to prove the following elements: (1) Plaintiff must have filed a proof of loss with its insurer; (2) settlement must not have occurred within six months of filing of that proof of loss; (3) Plaintiff must have brought a court action upon the policy; and (4) Plaintiff must have ultimately recovered more

OPINION AND ORDER - 12                                                    [RMD]

than the amount of any tender made by Defendant in the action." *Precision Seed Cleaners v. Country Mut. Ins. Co.*, 976 F. Supp. 2d 1228, 1236 (D. Or. 2013) (citing *Petersen v. Farmers Ins. Co. of Or.*, 162 Or. App. 462, 466 (1999)).

Here, Beck timely filed a proof of loss, was dissatisfied with the adequacy of the Payment, and filed an action in court to recover the difference between the true ACV of her home and the Payment. Moreover, there is no question that more than six months has elapsed since Beck filed her proof of loss. Therefore, Beck is entitled to attorney fees so long as her recovery in this action exceeds the amount of the Payment. As the court has already discussed, no reasonable jury could find that the Payment constituted the entire ACV of Beck's home. Therefore, Beck will be able to prove the fourth and final element for her attorney-fee claim as a matter of law, and will be entitled to attorney fees at trial.

Metropolitan contends it is premature to find Beck is entitled to attorney fees because the ACV of Beck's residence remains in dispute. Although the exact amount of the ACV is in dispute, the record shows to a legal certainty the ACV exceeds the $347.786.34 Metropolitan tendered to Beck on February 29, 2012. Whether the ACV of Beck's home exceeds Metropolitan's payment by one cent or ten-thousand dollars, she will be able to prove Metropolitan failed to settle her claim within six months after the date she filed her proof of loss. Therefore, Beck is entitled to attorney fees, and the court grants Beck's Motion for Partial Summary Judgment.

### Conclusion

For the aforementioned reasons, Metropolitan's Motion for Partial Summary Judgment (Dkt. No. 104) is DENIED and Beck's Motion for Partial Summary Judgment (Dkt. No. 92) is GRANTED. Beck's claims will proceed to trial for the purpose of determining the true RCV and

ACV of her home.

IT IS SO ORDERED.

DATED this ____ day of July, 2015.

JOHN V. ACOSTA
United States Magistrate Judge

OPINION AND ORDER - 14                                              [RMD]